UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

v.

D-1 RAJESH DOSHI,
D-2 ANKIT DOSHI,

Defendants.

_____/

Case:2:13-cr-20349
Judge: Cleland, Robert H.
MJ: Whalen, R. Steven
Filed: 05-07-2013 At 04:38 PM
INDI USA V. SEALED MATTER (DA)

VIO:  18 U.S.C. § 1349
      18 U.S.C. § 1347
      18 U.S.C. § 2
      18 U.S.C. § 982

## INDICTMENT

THE GRAND JURY CHARGES:

### General Allegations

At all times relevant to this Indictment:

### The Medicare Program

1. The Medicare program was a federal health care program providing benefits to persons who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services (CMS), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3. The Medicare program included coverage under two primary components, hospital insurance ("Part A") and medical insurance ("Part B"). Part A covered physical therapy, occupational therapy, and skilled nursing services if a facility was certified by CMS as meeting

certain requirements. Part B of the Medicare Program covered the cost of physicians' services and other ancillary services not covered by Part A. Under certain circumstances, Medicare Part B covered the cost of "home visits" for evaluation and management services provided to a beneficiary by a physician in a private residence.

4. Medicare Part B in the State of Michigan was administered by Wisconsin Physicians Service ("WPS"), a company that contracted with CMS to receive, adjudicate, process, and pay certain Part B claims, including services related to physician home visits.

5. TrustSolutions LLC was the Program Safeguard Contractor for Medicare Part A and Part B in the state of Michigan until April 24, 2012, when it was replaced by Cahaba Safeguard Administrators LLC.

6. Payments under the Medicare Program were often made directly to a provider of the goods or services, rather than to a beneficiary. This occurred when the provider submitted the claim to Medicare for payment, either directly or through a billing company.

7. Physicians, clinics, and other health care providers that provided services to Medicare beneficiaries were able to apply for and obtain a Medicare "provider number." A health care provider who was issued a Medicare provider number was able to file claims with Medicare to provide reimbursement for services provided to beneficiaries. A Medicare claim was required to set forth, among other things, the beneficiary's name, the date the services were provided, the cost of the services, and the name and identification number of the physician or other health care provider who had ordered the services.

8. By becoming a participating provider in Medicare, enrolled providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement. In order to receive Medicare funds, enrolled providers, together with their authorized agents, employees,

and contractors, were required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies, procedures, rules, and regulations issued by CMS and its authorized agents and contractors. Health care providers were given and provided with online access to Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations.

9. Upon certification, the medical provider, whether a clinic or an individual, was assigned a provider identification number for billing purposes (referred to as a PIN). When the medical provider rendered a service, the provider submitted a claim for reimbursement to the Medicare contractor/carrier that included the PIN assigned to that medical provider. When an individual medical provider was associated with a clinic, Medicare Part B required that the individual provider number associated with the clinic be placed on the claim submitted to the Medicare contractor.

10. Medicare Part B regulations required health care providers enrolled with Medicare to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for payment were submitted by the physician. These records were required to be sufficient to permit Medicare, through WPS and other contractors, to review the appropriateness of Medicare payments made to the health care provider under the Part B program.

11. Under Medicare Part B, a provider billing for a physician home visit was required to document the medical necessity of the service in lieu of an office or outpatient visit, to document the date the service was performed, and to identify the provider who performed the service. To be reimbursed for physician home visits purportedly provided by a physician,

Medicare required that the physician be physically present at the home at the time the service was provided.

12. In order to receive reimbursement for a covered service from Medicare, a provider was required to submit a claim, either electronically or using a form (e.g., a CMS-1500 form or UB-92), containing the required information appropriately identifying the provider, patient, and services rendered.

13. Providers could only submit claims to Medicare for services they rendered and providers were required to maintain patient records to verify that the services were provided as described on the claim form.

### Home Health Care

14. A home health agency was an entity that provided home health care, namely health services, including but not limited to skilled nursing, physical therapy, occupational therapy, and speech pathology services to homebound patients.

### Billing Codes and Procedures

15. The Medicare program, as well as virtually every other health care benefit program, required that claims for services report the type of service using the American Medical Association's Current Procedural Terminology ("CPT") Codes. CPT Codes were intended to accurately identify, simplify, and standardize billing for medical services. Related services were assigned sequential CPT Codes with differing levels of complexity. Among the most commonly billed codes were two series of five evaluation and management ("E&M") codes that applied to physician home visits. CPT Codes 99341, 99342, 99343, 99344, and 99345 were used for new patients, and 99347, 99348, 99349, and 99350 were used for established patients. For each of these series of CPT Codes, a higher code number corresponded to a more in-depth and time-

consuming level of service, with a correspondingly higher reimbursement amount. The American Medical Association annually published a CPT Manual, which set forth the criteria to be considered in selecting the proper codes to represent the services rendered.

### The Defendants

16.     Associated Visiting Physicians, PC, d/b/a Home Physician Services, PC ("HPS"), was a Michigan professional corporation, organized in or around February 2005, doing business at 17520 West 12 Mile Road Suite 109, Southfield, Michigan 48076.

17.     Defendant RAJESH DOSHI, who at all times relevant to this Indictment was a resident of Oakland County, Michigan, operated HPS.

18.     Defendant ANKIT DOSHI, who at all times relevant to this Indictment was a resident of Oakland County, Michigan, was the administrator of HPS.

### COUNT 1
### (18 U.S.C. § 1349—Health Care Fraud Conspiracy)

### D-1 RAJESH DOSHI
### D-2 ANKIT DOSHI

19.     Paragraphs 1 through 18 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

20.     From in or around July 2010, continuing through the present, the exact dates being unknown to the Grand Jury, in Oakland County, in the Eastern District of Michigan, and elsewhere, the defendants, RAJESH DOSHI and ANKIT DOSHI did willfully and knowingly combine, conspire, confederate, and agree with each other and others, known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false

and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

### Purpose of the Conspiracy

21. It was a purpose of the conspiracy for defendants RAJESH DOSHI, ANKIT DOSHI, and others to unlawfully enrich themselves by, among other things: (a) submitting false and fraudulent claims to Medicare; (b) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of the proceeds from the fraud; and (c) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators.

### Manner and Means

22. The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

23. HPS was incorporated in or around February 2005. An application was submitted for HPS to become a Medicare provider and Medicare issued HPS a provider number with an effective date of on or about April 2005.

24. RAJESH DOSHI, ANKIT DOSHI, and their coconspirators would control the day-to-day operations at HPS.

25. RAJESH DOSHI, ANKIT DOSHI, and their co-conspirators would submit or cause the submission of false claims to Medicare for services not rendered and not medically necessary, including (a) billing for physician home visits that were not provided; (b) "upcoding," or billing for physician home visit services that were not provided; and (c) referring patients to home health agencies for home health care that was not medically necessary.

26. RAJESH DOSHI and ANKIT DOSHI would assist other coconspirators in signing medical documentation certifying patients that had not been seen or diagnosed as homebound and referring them for home health services, such as physical therapy, occupational therapy, speech pathology, and skilled nursing services, that was not medically necessary.

27. RAJESH DOSHI, ANKIT DOSHI, and other coconspirators would falsify medical documentation reflecting reflect home health visits and services that had not been provided and were not medically necessary. RAJESH DOSHI, ANKIT DOSHI, and other coconspirators would cause to be submitted claims that reflected a higher level of service than HPS physicians had actually provided to patients, a practice known as "upcoding."

28. Coconspirators would sign medical documentation reflecting physician home visit services that had not been provided and were not medically necessary.

29. Coconspirators would sign medical documentation reflecting upcoded physician home visit services that were not provided and not medically necessary.

30. RAJESH DOSHI and other coconspirators would maintain a Medicare provider number for HPS and would cause the submission of Medicare claims for the cost of physician home health care services that were not provided and not medically necessary.

31. RAJESH DOSHI, ANKIT DOSHI, and other coconspirators would case the submission of claims by HPS to Medicare seeking reimbursement for the cost of physician home health care and other services purportedly provided to Medicare beneficiaries by coconspirators that were not, in fact, rendered and were not medically necessary.

32. RAJESH DOSHI and ANKIT DOSHI would cause HPS to submit claims to Medicare of $12.2 million for the cost of physician home care and other services, for which it was paid over $6 million.

7

33. RAJESH DOSHI and ANKIT DOSHI would transfer and disburse, and cause the transfer and disbursement of, monies from corporate accounts of HPS to themselves and others.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2–5
### (18 U.S.C. §§ 1347 and 2—Health Care Fraud)

**D-1 RAJESH DOSHI**
**D-2 ANKIT DOSHI**

34. On or about the dates enumerated below, at Oakland County, in the Eastern District of Michigan, and elsewhere, RAJESH DOSHI and ANKIT DOSHI, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of Medicare, in connection with the delivery of and payment for health care benefits, items, and services.

### Purpose of the Scheme and Artifice

35. It was the purpose of the scheme and artifice for the defendants and their coconspirators to unlawfully enrich themselves through the submission of false and fraudulent Medicare claims for home health services that were medically unnecessary and not performed.

### The Scheme and Artifice

36. Paragraphs 1 through 33 of this Indictment are realleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

**Acts in Execution of the Scheme and Artifice**

37. On or about the dates specified as to each count below, in Oakland County, in the Eastern District of Michigan, and elsewhere, the defendants, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of said health care benefit program:

| Count | Defendant | Medicare Beneficiary | Approximate Date of Service | Description of Items Billed | Amount Billed to Medicare |
|---|---|---|---|---|---|
| 2 | D-1 R. DOSHI<br>D-2 A. DOSHI | M.J. | 12/5/11 | 99350 - Home visit to an established patient that is unstable / has a significant new problem | $250.00 |
| 3 | D-1 R. DOSHI<br>D-2 A. DOSHI | M.W. | 3/27/12 | 99349 - Home visit to an established patient with problems of moderate / high severity | $175.00 |
| 4 | D-1 R. DOSHI<br>D-2 A. DOSHI | J.W. | 3/25/12 | G0181 - Physician certification for Medicare-covered home health services | $85.00 |
| 5 | D-1 R. DOSHI<br>D-2 A. DOSHI | J.W. | 2/19/11 | 99344 - Home visit to a new patient with problems of high severity | $175.00 |

In violation of Title 18, United States Code, Sections 1347 and 2.

## FORFEITURE ALLEGATIONS
(U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461;
18 U.S.C. § 982(a)(7)—Criminal Forfeiture)

38. The above allegations contained in this Indictment are incorporated by reference as if set forth fully herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Sections 981 and 982, and Title 28, United States Code, Section 2461.

39. As a result of the violation of Title 18, United States Code, Section 1349, as set forth in this Indictment, defendants RAJESH DOSHI and ANKIT DOSHI shall forfeit to the United States any property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such violation, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461.

40. As a result of the violations of Title 18, United States Code, Sections 1347 and 2, as set forth in this Indictment, defendants RAJESH DOSHI and ANKIT DOSHI shall forfeit to the United States any property, real or personal, that constitutes or is derived from, gross proceeds traceable to the commission of such violations, pursuant to 18 U.S.C. § 982(a)(7).

41. <u>Substitute Assets</u>: If the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

    a. Cannot be located upon the exercise of due diligence;

    b. Has been transferred or sold to, or deposited with, a third party;

    c. Has been placed beyond the jurisdiction of the Court;

    d. Has been substantially diminished in value; or

    e. Has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b) and/or 28 U.S.C. § 2461, to seek to forfeit any other property of the defendants up to the value of the forfeitable property described above.

42. <u>Money Judgment</u>: A sum of money equal to at least $9,285,949.19 in United States currency, or such amount as is proved at trial in this matter, representing the total amount of proceeds obtained as a result of the violations of 18 U.S.C. §§ 1349 and 1347, and representing the total amount involved in the violations as alleged in this Indictment.

THIS IS A TRUE BILL.  s/GRAND JURY FOREPERSON
Grand Jury Foreperson

BARBARA L. MCQUADE
United States Attorney

s/WAYNE F. PRATT
WAYNE F. PRATT
Chief, Health Care Fraud Unit
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
O:  (313) 226-2548
wayne.pratt@usdoj.gov

s/GEJAA T. GOBENA
GEJAA T. GOBENA
Deputy Chief
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W., Third Floor
Washington, D.C. 20005
C:  (202) 305-1310
O:  (313) 226-0831
gejaa.gobena@usdoj.gov

s/NIALL M. O'DONNELL
NIALL M. O'DONNELL
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W., Third Floor
Washington, D.C. 20005
C:  (202) 257-3295
O:  (313) 226-9616
niall.odonnell@usdoj.gov


Date:  May 7, 2013

**ORIGINAL**
United States District Court
Eastern District of Michigan

Criminal Case Cov[er]

Case: 2:13-cr-20349
Judge: Cleland, Robert H.
MJ: Whalen, R. Steven
Filed: 05-07-2013 At 04:38 PM
INDI USA V. SEALED MATTER (DA)

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to com[plete]

## Reassignment/Recusal Information
This matter was opened in the USAO prior to August 15, 2008   [ ]

| Companion Case Information | Companion Case Number: 12-cr-20603 |
|---|---|
| This may be a companion case based upon **LCrR 57.10** | **Judge Assigned:** Hon. Arthur J. Tarnow |
| ☒ Yes   ☐ No | **AUSA's Initials:** _NMO_ |

**Case Title:** USA v. Rajesh Doshi

**County where offense occurred:** Oakland County

**Check One:**    x Felony    ☐ Misdemeanor    ☐ Petty

   _X_ Indictment/____Information --- **no prior complaint.**
   ____Indictment/____Information --- based upon prior complaint [Case number:
   ____Indictment/____Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** _____   **Judge:** _____
   ☐ Original case was terminated; no additional charges or defendants.
   ☐ Corrects errors; no additional charges or defendants.
   ☐ Involves, for plea purposes, different charges or adds counts.
   ☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

May 7, 2013
   Date

NIALL M. O'DONNELL
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W., Third Floor
Washington, D.C. 20005
(313) 226-9616
niall.odonnell@usdoj.gov

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

10/13/09