UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

        Plaintiff,

v.

Vicha Janviriya, MD,

        Defendant.

No. 13-20349

Hon. Arthur J. Tarnow

VIO: 18 U.S.C. § 1349
18 U.S.C. § 981(a)(1)(A) & (C)
18 U.S.C. § 982(a)(7)
28 U.S.C. § 2461

## SUPERSEDING INFORMATION

THE UNITED STATES OF AMERICA CHARGES:

### General Allegations

At all times relevant to this Superseding Information:

### The Medicare Program

1. The Medicare program was a federal health care program providing benefits to persons who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services (CMS), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3. The Medicare program included coverage under two primary components, hospital insurance ("Part A") and medical insurance ("Part B"). Part A covered physical therapy, occupational therapy, and skilled nursing services if a facility was certified by CMS as meeting certain requirements. Part B of the Medicare Program covered the cost of physicians' services and other ancillary services not covered by Part A. The home health services at issue in this Superseding Information were covered by Part A.

4. Medicare Part B in the State of Michigan was administered by Wisconsin Physicians Service ("WPS"), a company that contracted with CMS to receive, adjudicate, process, and pay certain Part B claims, including services related to physician home visits.

5. National Government Services was the CMS intermediary for Medicare Part A in the state of Michigan. TrustSolutions LLC was the Program Safeguard Contractor for Medicare Part A and Part B in the state of Michigan until April 24, 2012, when it was replaced by Cahaba Safeguard Administrators LLC.

6. Physicians, clinics, and other health care providers that provided services to Medicare beneficiaries were able to apply for and obtain a Medicare "provider number." A health care provider who was issued a Medicare provider

2

number was able to file claims with Medicare to provide reimbursement for services provided to beneficiaries. A Medicare claim was required to set forth, among other things, the beneficiary's name, the date the services were provided, the cost of the services, and the name and identification number of the physician or other health care provider who had ordered the services.

7. By becoming a participating provider in Medicare, enrolled providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement. In order to receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies, procedures, rules, and regulations issued by CMS and its authorized agents and contractors.

8. Upon certification by Medicare, the medical provider, whether a clinic or an individual, was assigned a provider identification number for billing purposes (referred to as a PIN). When the medical provider rendered a service, the provider submitted a claim for reimbursement to the Medicare contractor or carrier that included the PIN assigned to that medical provider. When an individual medical provider was associated with a clinic, Medicare Part B required that the individual provider number associated with the clinic be placed on the claim submitted to the Medicare contractor.

9. Health care providers were given or provided with online access to Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations. Providers could only submit claims to Medicare for services they rendered and providers were required to maintain patient records to verify that the services were provided as described on the claim form.

10. In order to receive reimbursement for a covered service from Medicare, a provider was required to submit a claim, either electronically or using a form containing the required information appropriately identifying the provider, patient, and services rendered.

## Home Health Care

11. A home health agency was an entity that provided health services, including but not limited to skilled nursing, physical therapy, occupational therapy, and/or speech pathology services to homebound patients.

## The Defendant

12. Vicha Janviriya, MD, a resident of Oakland County, Michigan, was a physician employed by Associated Visiting Physicians, PC, d/b/a Home Physician Services, PC ("HPS"). HPS was a Michigan professional corporation, organized in or around February 2005, doing business at 17520 West 12 Mile Road Suite 109, Southfield, Michigan 48076.

# COUNT 1
## (18 U.S.C. § 1349—Health Care Fraud Conspiracy)

13. Paragraphs 1 through 12 of the General Allegations section of this Superseding Information are realleged and incorporated by reference as though fully set forth herein.

14. From in or around February 2006, continuing through in or about September 2012, the exact dates being unknown to the United States, in Oakland County, in the Eastern District of Michigan, and elsewhere, the defendant, Vicha Janviriya, MD, and others known and unknown did willfully and knowingly combine, conspire, confederate, and agree with each other and others, known and unknown to the United States, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

### Purpose of the Conspiracy

15. It was a purpose of the conspiracy for defendant Vicha Janviriya, MD, ("Dr. Janviriya") and others to unlawfully enrich themselves by, among other

5

things: (a) submitting false and fraudulent claims to Medicare; (b) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of the proceeds from the fraud; and (c) diverting proceeds of the fraud for the personal use and benefit of the defendant and his co-conspirators.

### Manner and Means

16. The manner and means by which the defendant and his co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

17. HPS was incorporated in or around February 2005. An application was submitted for HPS to become a Medicare provider and Medicare issued HPS a provider number with an effective date of on or about April 2005.

18. An application was submitted to Medicare for Dr. Janviriya to become a Medicare provider at HPS. On or about May 15, 2005, Medicare issued Dr. Janviriya a provider number at HPS with an effective date of on or about January 24, 2005.

19. Co-conspirators would control the day-to-day operations at HPS.

20. Co-conspirators would submit or cause the submission of false claims to Medicare for services not rendered and not medically necessary, including (a) billing for physician home visits that were not provided; (b) "upcoding," or billing for physician home visit services that were not provided; and (c) referring patients

to home health agencies for home health care services that were not provided and not medically necessary and where referrals for the services were obtained through the payment of kickbacks.

21. Dr. Janviriya would refer patients to home health agencies for physical therapy and other services that were not provided, not medically necessary, and obtained through the payment of kickbacks.

22. Dr. Janviriya and co-conspirators would sign medical documentation, including home health certifications and referrals, ordering physical therapy and other services purportedly provided to Medicare by home health agencies, which were in fact not provided, not medically necessary, and where the referrals were obtained through the payment of kickbacks.

23. Co-conspirators would maintain Medicare provider numbers for Dr. Janviriya and other co-conspirators at HPS and submit and cause the submission of claims to Medicare for home physician services that were not medically necessary, not provided, and where the referrals were obtained through the payment of kickbacks.

24. Co-conspirators would maintain Medicare provider numbers for the home health agencies who received referrals from Dr. Janviriya and would submit and cause the submission of Medicare claims for the cost of physical therapy and

other services that were not provided, not medically necessary, and where the referrals were obtained through the payment of kickbacks.

25. Dr. Janviriya and other co-conspirators would submit and cause the submission of false and fraudulent claims to Medicare for home health care services that resulted in the payment of $1,366,496.84.

26. Dr. Janviriya and other co-conspirators would transfer and disburse, and cause the transfer and disbursement of, monies from the various corporate accounts of HPS and home health agencies to themselves and others for their personal benefit.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATIONS
## (U.S.C. § 981(a)(1)(A) & (C), 28 U.S.C. § 2461, and 18 U.S.C. § 982(a)(7))

27. The above allegations contained in this Superseding Information are incorporated by reference as if set forth fully herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Sections 981 and 982, and Title 28, United States Code, Section 2461.

28. As a result of the violations of Title 18, United States Code, Section 1349, as set forth in Count One of this Superseding Information, defendant Vicha Janviriya, MD, shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(7), and Title 18, United States Codes, Section 981(a)(1)(C),

as incorporated by Title 28, United States Code, Section 2461, all property, real and personal, which constitutes or is derived from gross proceeds traceable to the offense alleged in Count One of this Superseding Information.

29. **Forfeiture Money Judgment:** The United States shall also seek the imposition of a personal forfeiture money judgment against defendant Vicha Janviriya, MD, in an amount up to the value of the gross proceeds obtained as a result of defendant's violation of Count One.

30. **Substitute Assets:** Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), the defendant Vicha Janviriya, MD, shall forfeit substitute property, if by any act or omission of the defendants, property subject to forfeiture: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty.

31. All in accordance with Title 18, United States Codes, Sections 981(a)(1)(A) & (C) and 982(a)(7), Title 28, United States Codes, Section 2461, Title 21, United States Codes, Section 853, and Rule 32.2, Federal Rules of Criminal Procedure.

BARBARA L. MCQUADE
United States Attorney

s/ Wayne F. Pratt
Wayne F. Pratt
Chief, Health Care Fraud Unit
Assistant United States Attorney

s/ Catherine K. Dick
Catherine K. Dick
Assistant Chief
Department of Justice
Fraud Section

s/ Niall M. O'Donnell
Niall M. O'Donnell
Matthew Thuesen
Trial Attorneys
Department of Justice
Fraud Section

Date:

**ORIGINAL**

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet | Case Number<br>13-20349 |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

**Reassignment/Recusal Information** This matter was opened in the USAO prior to August 15, 2008 [ ]

| **Companion Case Information** | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes   ☒ No | AUSA's Initials: _NMO_ |

**Case Title:** USA v. _____

**County where offense occurred :** _____

**Check One:**   ☒ Felony   ☐ Misdemeanor   ☐ Petty

____Indictment/____Information --- **no** prior complaint.
____Indictment/____Information --- based upon prior complaint [Case number:                    ]
____Indictment/____Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** 13-20349       **Judge:** Arthur J. Tarnow

☐ Original case was terminated; no additional charges or defendants.
☐ Corrects errors; no additional charges or defendants.
☒ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
| Vicha Janviriya | 18 USC § 1349<br>18 USC § 981 (a)(1)(A) & (C)<br>18 USC § 982 (a)(7) | |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

_____
Date

_[signature]_
Niall O'Donnell
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone: (202)257-3295
Fax:    (313)226-2621
E-Mail address: Niall.odonnell@usdoj.gov
Attorney Bar #:  991519

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.
04/13